(No. 34904.—

MARIE B. HANLEY, Appellee, *vs.* EDWARD V. HANLEY, Appellant.

*Opinion filed September 18, 1958.*

CHESTER THOMSON, of Bloomington, for appellant.

ARLO E. BANE, of Bloomington, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This action was brought in the circuit court of McLean County by Marie B. Hanley, plaintiff, to eject her husband, Edward V. Hanley, defendant, from an 80-acre farm they had occupied as husband and wife prior to their separation in 1955, and for an accounting of profits received by the defendant therefrom. In answer to the complaint, defendant admitted that record title to the farm property was taken in the plaintiff's name in 1936 and had so remained.

However, he alleged by way of affirmative defense that this was done "as a matter of convenience" because he was then "plagued by many creditors" and "in great financial distress;" that he was the equitable owner of the farm; and that the deed was issued to plaintiff to secure money advanced by her and should be treated as a mortgage. The cause was referred to a master in chancery, who recommended that an order be entered granting plaintiff possession of the premises, and that an accounting be made. Defendant filed objections to the master's report, which were overruled. Thereafter he amended his affirmative defense by an allegation that the plaintiff had promised to place the property in joint tenancy when the premises were freed from encumbrances, and that, the condition having occurred, he was entitled to an undivided one-half interest therein by reason of this agreement or by virtue of a resulting trust. A counterclaim was also filed by the defendant at this time which alleged, among other things, that a portion of the purchase money was furnished by him; that plaintiff had many times acknowledged his equal ownership; and that he was entitled to a conveyance of a joint tenancy interest in the property. The matter was again referred to the master, who found for the plaintiff upon the material issues. A decree was thereafter entered pursuant to these findings which declared the plaintiff to be the fee-simple owner of the property and again referred the cause to the master for the taking of additional evidence concerning the accounting between the parties. Defendant appealed directly from that order, but we dismissed the appeal pursuant to section 50(2) of the Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 50(2),) since the order did not adjudicate all the claims of the parties and failed to contain an express finding by the trial court that there was no just reason for delaying the appeal. (*Hanley* v. *Hanley,* 13 Ill.2d 209.) The trial court thereafter appropriately amended its decree

and defendant appealed therefrom. We have taken the case upon the original briefs and abstract. *Ariola* v. *Nigro,* 13 Ill.2d 200.

The property in question is a part of a 160-acre tract which was acquired by defendant's father about 1905. Before the defendant and plaintiff were married in 1918, he farmed the land for his father, and thereafter he and plaintiff occupied the premises until his father sold the property to Thomas Hanley, defendant's uncle. Defendant entered into an agreement with his uncle to purchase the 160-acre tract for $7,000 payable over a five-year period, subject to a $15,000 first mortgage held by Prudential Life Insurance Company. No payments were made on the contract, and it was forfeited. Prudential foreclosed its mortgage, and purchased the property at the mortgage sale. Thereafter it assigned its certificate of purchase, for value, to the Federal Land Bank of St. Louis. On July 3, 1936, the certificate was further assigned by the Land Bank to plaintiff and, upon the expiration of the redemption period, a master's deed for the premises was delivered to plaintiff for a recited consideration of $18,300, which deed was recorded on July 24, 1936. Plaintiff then executed mortgages to the Federal Land Bank and the Land Bank Commissioner of St. Louis in the amounts of $10,500 and $5,500 respectively, and the defendant joined therein as the mortgagor's spouse. Plaintiff and defendant occupied and operated the farm until 1938, when the east 80 acres were sold for $16,387, and the greater part thereof was applied upon the existing mortgages. Defendant continued to work the 80-acre tract in question and, in 1940, joined plaintiff in the execution of a new mortgage to the Federal Land Bank of St. Louis in the sum of $6,300. Approximately one half of this sum was used to retire the purchase money mortgages which had been given in 1936. The latter encumbrance was fully satisfied by defendant in 1946, and no further loans were

negotiated prior to the time the parties separated and plaintiff moved from the premises. Subsequently, plaintiff duly served upon defendant a landlord's 60-day notice to quit, whereby she demanded possession by March 1, 1956. This demand was not honored.

Plaintiff testified before the master that she paid the purchase price of $18,300 for the farm from the proceeds of the Federal loans and from about $2,500 of her individual funds; that in addition, she compromised other liens upon the property and borrowed $4,000 from her family which she expended for this purpose; that when the 80-acre tract was sold in 1938, the family loan was repaid and the balance applied upon the existing mortgages; that farm-loan installments and taxes were paid by amounts received from the farming operation; that she never promised to convey an interest in the property to defendant; and that no accounting had ever been made to her for crops produced on the premises.

Defendant testified that he and plaintiff each contributed $2,500 toward the initial purchase price of the farm upon the understanding that when all their bills were paid plaintiff would place title to the land in both their names as joint tenants. Although he claimed that his share of the purchase money was paid by check, it was later stipulated that plaintiff would testify that, upon examination of bank records and cancelled checks, no evidence of any such payment was found. Defendant stated that he managed the farm from the time of its purchase; used the proceeds therefrom to pay taxes, mortgage installments, and living expenses and was never asked by plaintiff for an accounting until the commencement of this litigation; that title to the farm was taken in plaintiff's name because he then had outstanding judgment creditors; and that the final mortgage payment of $5,000 was made by him from his individual funds.

Defendant's contentions as raised by the pleadings were that title to the farm was placed in plaintiff's name for convenience only, and defendant is the equitable owner thereof; that the deed to the plaintiff was for security purposes and should be considered as a mortgage; that plaintiff orally agreed to convey a joint tenancy interest in the premises to him; and that a trust arose from his contributions to the purchase price of the farm. However, in the brief filed herein, defendant has argued only that the alleged oral promise should be enforced, or a resulting or constructive trust declared.

Since record title to the land is in the name of the plaintiff, she is entitled to possession unless the defendant can show equitable ownership by reason of a constructive trust, a resulting trust, or an oral agreement to convey. The burden of proof in these respects is upon him, (*Wright* v. *Wright,* 2 Ill.2d 246; *Ellis* v. *Williams,* 414 Ill. 99; *Bremer* v. *Bremer,* 411 Ill. 454,) and since both the master and lower court have found for the plaintiff, their decision will be disturbed by this court only if against the manifest weight of the evidence. *Tess* v. *Radley,* 412 Ill. 405; *Hopkins* v. *Austin State Bank,* 410 Ill. 67; *Finley* v. *Felter,* 403 Ill. 372.

From defendant's argument it is not clear whether he is contending that the facts establish a constructive or a resulting trust. To justify the declaration of a constructive trust, defendant must plead and prove either actual fraud or the abuse of a confidential relationship. (*Fowley* v. *Braden,* 4 Ill.2d 355; *Ridgely* v. *Central Pipe Line Co.* 409 Ill. 46; *Steinmetz* v. *Kern,* 375 Ill. 616.) We find no evidence in this record of actual fraud on the part of plaintiff, or that she abused a confidential relationship, and therefore defendant cannot prevail on this theory.

A resulting trust arises by operation of law and is founded on the presumed intent of the parties ascertained

from their acts and attendant facts and circumstances, and usually comes into existence where one person furnishes the consideration, or an aliquot part thereof, for the purchase of property while the title is taken in the name of another, (*Wright* v. *Wright*, 2 Ill.2d 246; *Craven* v. *Craven*, 407 Ill. 252; *Tuntland* v. *Haugen*, 399 Ill. 595,) and it arises, if at all, at the instant legal title is taken and vests. (*Tilley* v. *Shippee*, 12 Ill.2d 616.) Acts of the alleged trustee or equitable owner subsequent to the taking of title, have no bearing upon the question of whether a resulting trust was raised. (*Wright* v. *Wright*, 2 Ill.2d 246; *Craven* v. *Craven*, 407 Ill. 252; *Briscoe* v. *Price*, 275 Ill. 63.) Moreover, when payment is made by a husband and title taken in the name of the wife, it is presumed that the initial contributions were gifts to the wife, (*Nickoloff* v. *Nickeloff*, 384 Ill. 377; *Goelz* v. *Goelz*, 157 Ill. 33,) and while such presumption is rebuttable, it "is not to be frittered away by mere refinement." (*Baker* v. *Baker*, 412 Ill. 511.) To justify the declaration of such trust, the evidence must be clear, convincing and unmistakable. *Scanlon* v. *Scanlon*, 6 Ill.2d 224; *Tuntland* v. *Haugen*, 399 Ill. 595; *Cook* v. *Blazis*, 365 Ill. 625.

In the case at bar, the only evidence of an initial contribution by defendant was his assertion that he contributed $2500 toward the purchase price of the farm, which was denied by plaintiff, and defendant produced no corroborative cancelled checks or other records. Nor is there any substantial evidence to rebut the presumption of a gift. (Cf. *Baker* v. *Baker*, 412 Ill. 511, 516.) Although defendant may have contributed some of his own funds to pay principal and interest on the mortgages, taxes and other expenses, such matters are not material to this issue. Consequently, the trial court did not err in refusing to declare a resulting trust.

The defendant also contends that he is entitled to specific performance of the plaintiff's alleged oral promise to

place the property in joint tenancy. To justify such relief it was incumbent upon him to show by clear and convincing proof the existence of such an agreement, that the terms thereof were certain, definite and unequivocal, and that the agreement had been fully performed by him. (*Greenwood* v. *Commercial National Bank of Peoria*, 7 Ill.2d 436; *Pope* v. *Speiser*, 7 Ill.2d 231; *Wessel* v. *Eilenberger*, 2 Ill.2d 522.) A mere expression of intention to convey property creates nothing more than an unenforceable expectation. (*Galapeaux* v. *Orviller*, 4 Ill.2d 442; *Tess* v. *Radley*, 412 Ill. 405.) The evidence pertaining to the alleged oral contract is conflicting. Defendant testified that when the farm was purchased in 1936, plaintiff and defendant agreed that the title would be taken in the name of plaintiff; that each would contribute $2,500 toward the purchase price of the farm and after their bills or accounts were paid, the property would be placed in joint tenancy; that plaintiff agreed to give a joint tenancy deed when the original mortgage was made, but refused to do so on the advice of her family; that in 1938 plaintiff agreed to place the property in joint tenancy when they sold 80 acres; and that in 1946 when he owned certain property on Clinton Street, plaintiff said, "Why don't you sell it and I will give you a deed in joint tenancy." Plaintiff denied that she ever promised or agreed to convey the premises to defendant. The testimony of Sarah Norton, daughter of the litigants, indicates that through the years the parties argued over the title to the farm; that many times defendant asked plaintiff to put the property in their joint names and plaintiff put him off; that plaintiff would say she would put it in their joint names "the next year" or "whenever it was paid off," or "when the total mortgage was paid off" or "sometime" or "when everything is cleared up on it."

Even considering this evidence in the light most favorable to defendant, it does not show an oral agreement definite in its terms. If any agreement existed, it was uncer-

tain as to the consideration and the time for performance. The proof falls far short of establishing an oral contract to convey and the order denying specific performance was not against the manifest weight of the evidence.

However, if we assume that defendant proved the existence of a definite contract, equitable relief would still rest in the sound discretion of the court. (*Tess* v. *Radley*, 412 Ill. 405.) Defendant has urged that title was placed in plaintiff in order to avoid the lien of his judgment creditors and that he is the beneficial owner of the farm. The law will not permit a party to deliberately place his property out of his control for a fraudulent purpose and then, through the intervention of a court of equity, regain the title after his fraudulent purpose has been accomplished, but rather, will leave the parties as it finds them. (*Rosenbaum* v. *Huebner*, 277 Ill. 360; *Dorman* v. *Dorman*, 187 Ill. 154; *Ford* v. *Caspers*, (Ill.) 42 F. Supp. 994; 30 C.J.S., Equity, sec. 95, p. 484.) Under these circumstances, it was within the discretion of the trial court to deny defendant's claim for equitable relief.

While it appears that defendant has made contributions to the retirement of the mortgage on the premises, his right to reimbursement, if any, is a question to be determined in the accounting phase of this case and is not before us on this appeal. The only question before us is plaintiff's right to possession. For the reasons stated, the order of the trial court will be affirmed and the cause remanded for the purpose of an accounting.

*Affirmed and remanded.*